UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDALL SCHUTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 06 C 1327 |
| v. | ) |
| | ) Judge Ruben Castillo |
| ARROW FINANCIAL SERVICES, | ) |
| LLC and TRUELOGIC FINANCIAL | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Randall Schutz filed a putative class action suit against Arrow Financial Services LLC ("Arrow") and TrueLogic Financial Corporation ("TrueLogic") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a-1692p (2000).[1] Schutz alleges that TrueLogic sent to him two letters that violated the FDCPA. Arrow has filed a motion for summary judgment arguing that it is not a proper defendant because it took no part in drafting or reviewing the letters. (R. 25, Mot. Summ. J. ¶ 4.) For the reasons set forth below, Arrow's motion for summary judgment is denied.

## BACKGROUND[2]

On June 3, 2002, Arrow, which is principally in the business of debt collection, purchased Schutz's defaulted Chase Manhattan debt and began sending him collection letters. (R. 38, Def.'s Resp. to Pl.'s Additional Facts ¶ 27; R. 35-1, Pl.'s Resp. to Def.'s Facts ¶¶ 5-6.) On

---

[1] Unless otherwise noted, all citations to the FDCPA are from the 2000 version of the United States Code.

[2] These facts are derived from the Arrow and Schutz's statements of facts filed pursuant to Local Rule 56.1(b). Unless otherwise indicated, the facts included herein are undisputed.

February 7, 2003, Arrow entered into an agreement with TrueLogic ("the Agreement"), in which Arrow assigned TrueLogic the responsibility of collecting on Schutz's account, but retained ownership of Schutz's defaulted debt. (R. 35-1, Pl.'s Resp. to Def.'s Facts ¶ 12; R. 1, Compl., Exs. A & B.) Arrow has not sent a collection letter directly to Schutz since October 28, 2004, or contacted Schutz directly by telephone since September 21, 2003. (R. 35-1, Pl.'s Resp. to Def.'s Facts ¶¶ 8-9.)

TrueLogic sent Schutz two letters concerning his debt to Chase Manhattan, dated December 15, 2005, and January 6, 2006, which are the basis of this suit. (R. 35-1, Pl.'s Resp. to Def.'s Facts ¶¶ 5, 21; R. 1, Compl., Exs. A & B.) The parties do not dispute that Arrow did not draft, print, or mail the letters at issue here. (R. 35-1, Pl.'s Resp. to Def.'s facts ¶¶22, 24-25.) The two nearly identical letters prominently feature TrueLogic's name, logo, and contact information, list Chase Manhattan as the creditor, and specify Arrow as the present owner of the debt. (R. 1, Compl., Exs. A & B.) The letters contain a "Settlement Offer Amount" of $1,516.29, which is exactly 50% of the listed "Current Balance" for the debt, and state that "[t]he full payment of the settlement offer will absolve you from further obligation on this account. Upon receipt of your settlement payment and clearance of funds, we will forward to you a letter for your local credit bureau indicating your account is SETTLED." (*Id.*, Exs. A & B.) Schutz alleges in his complaint that this assertion is misleading and omits material information in violation of the FDCPA. (*Id.* ¶¶ 23-27.)

The parties agree that Arrow and TrueLogic's handling of Schutz's account is governed by the Agreement. (*Id.* ¶¶ 11-12; R. 27, Def.'s Facts, Ex. 4-B.) The parties dispute, however, the extent of Arrow's role in supervising TrueLogic's activities, particularly the drafting of the two

2

collection letters. The Agreement defines Arrow as "Client" and TrueLogic as "Agency." (R. 27, Def.'s Facts, Ex. 4-B at 1.) The Agreement requires TrueLogic to collect debts for Arrow in accordance with the following "work standards":

> Client will place accounts with Agency for collection purposes and Agency will undertake collection of each account placed by Client by using due diligence and employing such lawful means, methods and procedures as in its judgment, discretion and experience will best effect the collection of such accounts.

(R. 38, Def.'s Resp. to Pl.'s Additional Facts ¶ 38; R. 27, Def.'s Facts, Ex. 4-B ¶ I.A.) The Agreement further provides that once an account is placed with TrueLogic, TrueLogic will activate the account within 24 hours, send a validation letter within 72 hours, and make initial contact with the debtor within 96 hours. (R. 27, Def.'s Facts, Ex. 4-B ¶ I.A.) Pursuant to the Agreement, Arrow may conduct remote and on-site audits in order to assess whether TrueLogic has complied with the work standards. (Id. ¶ I.F.)

The Agreement also states that TrueLogic must comply with applicable laws such as the FDCPA (id. ¶ III.D), and cannot send any mass settlement letters without Arrow's prior approval. (Id. ¶ III.M.) The Agreement further provides that: "Upon execution of this agreement, Agency shall provide Client with . . . copies of all letters Agency intends to use in collecting Client's accounts under this Agreement. Agency shall provide updates of [this] information . . . on an annual basis or as requested by Client." (Id. ¶ III.N.)

Other provisions of the Agreement also reserve Arrow's right to examine TrueLogic's work and recall accounts assigned to TrueLogic. The Agreement gives Arrow the right to "examine Agency's records relating to accounts placed under this

3

Agreement, including all written materials sent or received by Agency relating to the accounts." (*Id.* ¶ III.B.) The Agreement also requires that TrueLogic comply with applicable confidentiality laws and authorizes Arrow to evaluate TrueLogic's compliance through the use of "audits and summaries of test results." (*Id.* ¶¶ III.D., III.O.) Arrow can also examine TrueLogic's records (*id.* ¶ III.B), and recall accounts based on Arrow's "reasonable opinion" that it is "necessary" to recall the accounts (*id.* ¶ III.C).

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *Smith v. Potter*, 445 F.3d 1000, 1006 (7th Cir. 2006). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the court views the record in the light most favorable to the non-moving party. *Smith*, 445 F.3d at 1006. However, a party opposing a properly supported motion for summary judgment may not rest on the pleadings, but must demonstrate that a genuine issue of fact exists requiring trial. *Anderson*, 477 U.S. at 249 (citations and quotations omitted).

### II. Analysis

The FDCPA prohibits a "debt collector" from engaging in abusive debt collection

4

practices that would likely disrupt a debtor's life. *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000). By its terms, the FDCPA only applies to debt collectors. *Neff v. Capital Acquisitions & Mgmt. Co.*, 352 F.3d 1118, 1121 (7th Cir. 2003). Arrow argues that judgment should be entered in its favor because it did not act as a debt collector with regard to Schutz's account. (R. 26-1, Def.'s Mem. at 3-4; R. 25, Mot. Summ. J. ¶ 6.) Instead, Arrow contends that TrueLogic was solely responsible for the content of the letters and that it cannot be held vicariously liable for TrueLogic's actions. (R. 26-1, Def.'s Mem. at 6-8.) Schutz counters that Arrow is a debt collector within the meaning of the FDCPA because it attempts to collect debts indirectly through TrueLogic. (R. 34-1, Pl.'s Resp. to Def.'s Mot. at 7-8.) Schutz also argues that Arrow may be held vicariously liable for TrueLogic's collection efforts based on agency principles. (*Id.* at 8-15.)

The FDCPA defines a debt collector as "any person [1] who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *Pettit*, 211 F.3d at 1059. The inquiry as to whether a person is a debt collector is not case specific, but rather depends on whether that person "regularly" collects debts—in other words a person cannot be considered a debt collector with regard to one debtor and not a debt collector with regard to another debtor. *See* 15 U.S.C. § 1692a(6). Thus, contrary to the parties' arguments about indirect debt collection (R. 36, Def.'s Reply at 3-4; R. 34-1, Pl.'s Resp. at 7-8), whether Arrow has indirectly attempted

to collect Schutz's particular debt is not determinative as to whether Arrow is a debt collector. By admitting that it regularly collects or attempts to collect the debts owed to others (R. 38, Def.'s Resp. to Pl.'s Facts ¶ 29), Arrow has conceded facts that make it fall within the statutory definition of a debt collector. The question before the Court instead is whether one debt collector, Arrow, may be held vicariously liable for the allegedly illegal collection activities of a second company, TrueLogic. Furthermore, if vicarious liability does exist for the actions of third party collectors, this Court must still determine whether Arrow has the requisite principal-agent relationship with TrueLogic required for liability.

### 1. Vicarious Liability under the FDCPA

Many courts have recognized that a company may be held vicariously liable for the collection activities of attorneys working on its behalf. *See Fox v. Citicorp*, 15 F.3d 1507, 1516 (9th Cir. 1994); *Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036, 1039 (N.D. Ill. 2005); *Caron v. Maxwell*, 48 F. Supp. 2d 932, 936 (D. Ariz. 1999); *Alger v. Ganick, O'Brien & Sarin*, 35 F. Supp. 2d 148, 153 (D. Mass. 1999); *Randle v. GC Servs.*, 25 F. Supp. 2d 849, 851 (N.D. Ill. 1998); *Ditty v. CheckRite*, 973 F. Supp. 1320, 1333 (D. Utah 1997); *Farber v. NP Funding II L.P.*, No. CV-96-4322, 1997 WL 913335 (E.D.N.Y. Dec. 9, 1997); *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1486 (M.D. Ala. 1987). However, few courts have addressed whether a debt collector who owns a debt, like Arrow, may be held vicariously liable for the collection activities of a second party working on its behalf when the second party is not an attorney. *See Scally*, 392 F. Supp. 2d at 1038-39.

In one of the few cases to address the question of vicarious liability for FDCPA violations by non-attorneys, the Third Circuit held in *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000), that a company meeting the definition of a "debt collector" under the FDCPA may be held vicariously liable for the actions of a second company acting on its behalf. *Id.* at 403-06. In *Pollice*, the City of Pittsburg assigned defaulted debts to National Tax Funding ("NTF"). *Id.* at 385. NTF retained the right to service the debts and hired a second company, Capital Asset Research Corp. ("CARP"), for these purposes. *Id.* The court found that NTF could be held vicariously liable for CARP's collection activities, reasoning that a line of cases holding owners of debts liable for the collection activities of attorneys applied equally in the case of the owner of a debt utilizing a separate company, rather than an attorney, to collect debts. *Id.* at 405. In support of its conclusion, the court noted, "We believe this is a fair result because an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." *Id.*

Like the *Pollice* court, this Court sees no reason to limit the use of vicarious liability to companies that have engaged an attorney to collect debts. Vicarious liability emerged as a means to provide equal relief to not only those victimized by attorney debt collectors, but also consumers victimized by non-attorney debt collectors. *See, e.g., Kimber*, 668 F. Supp. at 1486 (discussing the legislative history of the FDCPA and noting its intent to reach "third party" or "independent" debt collectors "who generally are [not] restrained by the desire to protect their good will when collecting past due accounts"). We believe it would be incongruous to hold debt collectors who use attorney agents liable to a greater extent than debt collectors who use non-

7

attorney agents to collect their debts.

This Court finds unpersuasive the *Scally* rationale for limiting vicarious liability to cases involving attorney debt collectors. In *Scally*, the court reasoned that debt collectors were held vicariously liable for the debt collecting activities of their attorney-agents because the FDCPA originally excluded attorneys from liability, and without vicarious liability, there would be no one to hold liable for violations of the FDCPA. 392 F. Supp. 2d at 1038-39. However, even after Congress removed the exemption for attorneys from the FDCPA in 1986, and the Supreme Court held that attorneys may be held liable for their debt collection activities,[3] courts around the country continued to hold debt collectors liable for the activities of their debt-collecting attorneys. *E.g., Caron*, 48 F. Supp. 2d at 936; *Alger*, 35 F. Supp. 2d at 153; *Randle*, 25 F. Supp. 2d at 851; *Ditty*, 973 F. Supp. at 1333; *Pollice*, 225 F.3d at 404; *Farber*, 1997 WL 913335. Moreover, barring vicarious liability for non-attorney debt collecting agents would unreasonably discourage debt collectors from ever contracting with attorneys for this job. Therefore, we agree with *Pollice* that a debt collector may be held vicariously liable for the actions of a second debt collector working as an agent of the first, regardless of whether that second debt collector is an attorney.

2. **Existence of a Principal-Agent Relationship**

The next step in order to find whether Arrow may be held vicariously liable for TrueLogic's actions, is to determine if Arrow established a principal-agent relationship with TrueLogic with regard to the collection letters. *See Pollice*, 225 F.3d at 404. The parties have

---

[3] *See* Pub. L. 99-361, 100 Stat. 768, (codified at 15 U.S.C. § 1692a) (removing attorney exemption); *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (holding that attorneys were subject to direct FDCPA liability even if the attorneys' debt collection activities consist of litigation).

8

not addressed whether federal common law or Illinois law governs the formation of a principal-agent relationship here. Regardless, this Court need not decide this issue because both Illinois courts and the Seventh Circuit follow the Restatement of Agency. *See Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000); *Kinesoft Dev. Corp. v. Softbank Holdings Inc.*, 139 F. Supp. 2d 869, 899 (N.D. Ill. 2001); *Scally*, 392 F. Supp. 2d at 1040. A principal-agent relationship exists "when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006); *Valenti v. Qualex, Inc.*, 970 F.2d 363, 368 (7th Cir. 1992) ("The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal.").

Under the Agreement's terms, Arrow authorized TrueLogic to act on its behalf to settle debts owed to Arrow for a percentage of the payment balance, thereby affecting Arrow's legal relations with third party-debtors. (R. 27, Def.'s Facts, Ex. 4-B ¶ I.B.; R. 36, Def.'s Reply at 11-12.) Although Arrow did not draft, print, or mail the letters, the Agreement reserved Arrow's right to control the content of letters sent to consumers. In addition, the Agreement provides that TrueLogic may not "send any mass settlement letters without the prior written approval of [Arrow]." (R. 27, Ex. 4-B, ¶ III.M.) Paragraph III.N. of the Agreement also required TrueLogic to submit copies of "all letters [it] intends to use in collecting [Arrow's] accounts" upon execution of the Agreement. (*Id.* ¶ III.N.) Furthermore, TrueLogic was required to provide updated letters to Arrow annually or as requested. (*Id.*) Arrow could access TrueLogic's letters

9

on request and recall accounts based on its "reasonable opinion." (*Id.* ¶¶ III.C., III.N.) Arrow also reserved the right to monitor TrueLogic's compliance with the law through audits, summaries of test results, and other evaluations. (*Id.* ¶¶ I.F, III.O(vi).)

The evidence in the record, particularly the affidavit of TrueLogic's vice president, John Ruddy, demonstrates that Arrow never exercised its right to review or approve the letters. (R. 35-7, Ruddy Affidavit ¶ 13; R. 40, Ex. A, Ruddy Dep. at 13:21-13:25.) However, contrary to Arrow's arguments that no principal-agent relationship existed because it did not actually exercise its right to review TrueLogic's letters (R. 36, Def.'s Reply at 10), the law does not require that a principal *actually* control its agent as a prerequisite for establishing a principal-agent relationship. *Valenti*, 970 F.2d at 368 (stating that under Illinois law "[t]he ability or right to control is a key element to the determination, regardless of whether or not the principal exercises that right to control"); Restatement (Third) of Agency § 1.01 cmt. c (same). Instead, the test is whether the principal had the *right* to control, and the contract in this case established Arrow's right to control the settlement letters sent by TrueLogic.

Arrow argues that the two letters at issue in this suit were not "mass settlement letters," as referenced in Paragraph III.M. of the Agreement, and therefore were not subject to its control. (R. 38, Def.'s Resp. to Pl.'s Facts ¶ 32.) In support, Arrow points to Ruddy's deposition testimony. (R. 40, Ex. A, Ruddy Dep. At 19:15-19:16.) Ruddy stated that it is well known in the industry that mass settlement letters contain identical settlement offers for every debtor in a portfolio of debts and that TrueLogic did not send mass settlement letters for Arrow's accounts. (*Id.* at 19:20-20:13.) Other deposition testimony, however, undermines this position. Brian Cutler, Arrow's vice president and chief technology officer, stated in his deposition that "[a]

10

mass settlement letter would be a settlement letter sent out to a large group of accounts . . . or all the accounts . . . that were placed by us." (R. 35-4, Ex. C, Cutler Dep. at 35:13-17.) He further stated that the two letters at issue were settlement letters (*id.* at 37:5), and that "[a]nything more than one would be considered a mass," (*id.* at 36:1-2). It is undisputed that TrueLogic sent the letters at issue to more than 1,000 people. (R. 38, Def.'s Resp. to Pl.'s Additional Facts ¶ 31.) Based on Cutler's definition of "mass settlement letter" and the fact that the letter at issue was sent to more than 1,000 people, there is at least a genuine issue of material fact as to whether the letter falls within the definition of "mass settlement letters" in the Agreement.

Moreover, even if the letters are not "mass settlement letters" governed by Paragraph III.M. of the Agreement, other portions of the Agreement indicate that Arrow had control of the content of "all letters" that TrueLogic used to collect debts. (R. 27, Def.'s Facts, Ex. 4-B ¶ III.N.) Paragraph III.N. requires TrueLogic to submit "all letters" to Arrow annually or as required by Arrow. Because Arrow retained ownership of the accounts and the ability to recall the debts from TrueLogic pursuant to Paragraph III.C. of the Agreement, Arrow could control the content of the letters sent by TrueLogic. Thus, even if the letters are not covered under Paragraph III.M. of the Agreement, the Agreement still establishes a right to control TrueLogic's activities consistent with a finding of a principal-agent relationship.[4] Therefore, we find that Arrow may

---

[4] The agreement between the two debt collectors in *Scally* is distinguishable. In that case, the court reasoned in dicta that the agreement did not give rise to a principal-agent relationship due to a lack of control over the purported agent. *Scally*, 392 F. Supp. 2d at 1038, 1040. Unlike the present agreement, however, the agreement in *Scally* gave the non-attorney debt collecting company "full and complete authority" to contact debtors and settle accounts, other than requiring compliance with the FDCPA. *Id.* In contrast, the Agreement here limits TrueLogic's ability to send collection letters without receiving approval from Arrow. (*Id.* ¶¶ III.M, III.N.)

be held vicariously liable for TrueLogic's alleged violations of the FDCPA.

## CONCLUSION

Based on the foregoing, the Court finds that a principal-agent relationship exists between Arrow and TrueLogic under which Arrow may be held vicariously liable for FDCPA violations of its non-attorney agent, TrueLogic. Accordingly, Arrow's motion for summary judgment is denied.

The parties should confer and reevaluate their settlement positions in light of this opinion prior to the next status hearing, which will be held on January 11, 2007, at 9:45 a.m.

ENTERED

Judge Ruben Castillo
United States District Court

**DATED:** December 15, 2006